IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL A. ARCHULETA,

        Petitioner,

    v.

JOHN MYRICK,

        Respondent.

Civil No. 2:15-cv-01895-AC

OPINION AND ORDER

ANTHONY D. BORNSTEIN
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR  97204

    Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
NICK M. KALLSTROM
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

    Attorneys for Respondent

1 - OPINION AND ORDER -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. The parties have consented to the jurisdiction of a magistrate pursuant to 28 U.S.C. § 636. For the reasons that follow, the Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 2).

## BACKGROUND

### I.    Factual Background

In the summer of 2010, Petitioner began discussing a plan to produce methamphetamine with two co-conspirators, James Tilton and Nicholas Thomas. According the plan described by Thomas at trial, he was to cook the meth, Tilton was to sell the meth, and Petitioner was to act as security for the operation.

The three came up with a plan to "do something really bad" for the purpose of binding their commitment. The plan was to take someone into the woods and kill them, and for all three to take part in the killing. Specifically, all three were to stab the victim, and then Tilton would slit the victim's throat at the end. The chosen victim was Tilton's then-girlfriend.

On July 6, 2010, the three told the victim they were taking her with them on a trip to Mexico and started driving into the coast range. At a secluded spot along the highway, they pulled over and all four got out and walked into the woods. Tilton ordered the victim to take off all of her clothes, which she did. Then, as planned, Tilton held the victim from behind while Thomas and Petitioner each stabbed her three to four times in the abdomen and chest. Tilton then took the knife and slashed the victim's throat several times, then twisted her neck in an effort to break it.

The victim played dead, and Tilton and Thomas threw her down a slope toward a creek. She then got up and ran. Thomas and the Petitioner ran after her and saw her lying on the ground next to a tree. Only Petitioner went over to her, and when he returned he told Thomas and Tilton that he had hit her with a stick, that she didn't move, and that he thought she was dead. The three left her for dead and went back to town.

The victim got up and walked along a creek. Her left lung was punctured, so she often had to stop and lie down. She was using her left hand to put pressure on her neck, and her right hand to cover her other wounds, including one in her abdomen through which her intestines were hanging out. Eventually, she crawled under a fence and came to a barn. The barn owner was working in her yard when she spotted the victim, who was not wearing any clothes, was covered in blood, and appeared very weak. The barn owner called police, and the victim was able to tell the 911 operator the names of the people who had attacked her. The victim was transported to Emanuel Hospital, where she recovered. Police apprehended the three men later that night.

## II.    Procedural Background

On July 15, 2010, a Clatsop County grand jury indicted Petitioner on five counts of Attempted Aggravated Murder and one count each of Assault in the First Degree, Robbery in the First Degree, and Kidnapping in the First Degree. Resp. Exh. 102. The case was tried to a jury. The trial judge dismissed three counts of Attempted Aggravated Murder and the charge of Robbery in the First Degree. Resp. Exh. 116, p. 1. The jury acquitted Petitioner on one of the remaining counts of Attempted Aggravated Murder and the Kidnapping in the First Degree charge. *Id.* The jury found Petitioner guilty of Attempted Murder (as a lesser-included offense of the remaining Attempted Aggravated Murder charge) and Assault in the First Degree. *Id.*

3 - OPINION AND ORDER -

The trial judge sentenced Petitioner to 90 months of imprisonment on each conviction, to be served consecutively, and to be followed by three year of post-prison supervision. Resp. Exh. 116, p. 15. The court also imposed a total money award of $120,771.56, including $20,487.56 in restitution and a $100,000.00 compensatory fine. Resp. Exh. 116, pp. 2-3.

Petitioner filed a direct appeal, arguing that the trial court erred in imposing consecutive sentences. Resp. Exh. 116, pp. 9-19. In response, the State argued that the court properly imposed consecutive sentences for assaulting, and then attempting to murder the victim. Resp. Exh. 117. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Archuleta*, 257 Or. App. 70, 303 P.3d 1016, *rev. denied*, 354 Or. 389, 315 P.3d 420 (2013).

Petitioner filed a petition for state post-conviction relief ("PCR") alleging, *inter alia*, that trial counsel was constitutionally ineffective for failing to adequately object to the consecutive sentences. Resp. Exh. 125, p. 4. Petitioner also asserted other ineffective assistance of counsel claims, as well as claims of trial error. *Id*. at pp. 5-6.

The PCR trial court appointed counsel to represent Petitioner. At a hearing on the matter, Petitioner's counsel stated that he was unable to construe Petitioner's PCR petition to state a ground for relief. Resp. Exh. 135, pp. 104. Counsel explained:

> I have reviewed the file and transcripts in their entirety. The trial court sentenced the petitioner to consecutive sentences under ORS 137.123(5), making the required findings to allow consecutive sentences. The court found not one, but both bas[e]s for making its ruling regarding consecutive sentences. Evidence was presented by witnesses at trial which allowed the court to impose consecutive sentences. Petitioner's trial counsel . . . requested the court impose concurrent sentences, but the court chose not do do so. ORS 161.067 does not prevent the court from imposing consecutive sentences. In point of fact, it states that these are two separate crimes.

The court is allowed to make the sentences consecutive if it makes the required findings under ORS 137.123(5).

Resp. Exh. 135, pp. 1-4.

Following the hearing, the PCR trial court issued a judgment dismissing the petition as meritless pursuant to Or. Rev. Stat. § 138.525. Resp. Exh. 126. Petitioner appealed, but the appeal was dismissed because the PCR trial court's order was not appealable pursuant to Or. Rev. Stat. § 138.525(3). Resp. Exh. 134. The Oregon Supreme Court dismissed the petition for review. Resp. Exh. 133.

Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court, alleging seven grounds for relief. (ECF No. 2). In his counseled Brief in Support of Petition for Writ of Habeas Corpus, however, Petitioner asks this Court to reach only the claim alleged in Ground One, that trial counsel was constitutionally ineffective in failing to properly object to the consecutive sentences.

## LEGAL STANDARDS

A petition for writ of habeas corpus filed by a state prisoner shall not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or "resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented." 28 U.S.C. § 2254(d)(1) & (2); *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Petitioner bears the burden of proof. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

"Under § 2254(d)(1), a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (citing *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)) (internal quotations omitted). The Supreme Court recently reiterated the high standard of deference required by § 2254(d): "[t]his Court, time and again, has instructed that the AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White*, 134 S. Ct. at 460 (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)).

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two factors.

First, the petitioner must establish that counsel's performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness" under prevailing professional norms, "not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689).

Second, the petitioner must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* "The likelihood

of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112 (citing

*Strickland*, 466 U.S. at 693).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential, and when

the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (quotation marks

omitted). "[T]he question [under § 2254(d)] is not whether counsel's actions were reasonable. The

question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential

standard." *Id.*

## DISCUSSION

At Petitioner's sentencing hearing, trial counsel objected to the imposition of consecutive

sentences on the basis of Or. Rev. Stat. § 137.123, which provides in pertinent part:

> (4) When a defendant has been found guilty of more than one criminal offense arising
> out of a continuous and uninterrupted course of conduct, the sentences imposed for
> each resulting conviction shall be concurrent unless the court complies with the
> procedures set forth in subsection (5) of this section.
>
> (5) The court has discretion to impose consecutive terms of imprisonment for
> separate convictions arising out of a continuous and uninterrupted course of conduct
> only if the court finds:
>
> > (a) That the criminal offense for which a consecutive sentence is
> > contemplated was not merely an incidental violation of a separate statutory
> > provision in the course of the commission of a more serious crime but rather
> > was an indication of defendant's willingness to commit more than one
> > criminal offense; or
> >
> > (b) The criminal offense for which a consecutive sentence is contemplated
> > caused or created a risk of causing greater or qualitatively different loss,
> > injury or harm to the victim than was caused or threatened by the other
> > offense or offenses committed during a continuous and uninterrupted course
> > of conduct.

Or. Rev. Stat. § 137.123(4) & (5).

7 - OPINION AND ORDER -

Trial counsel argued that the conduct underlying Petitioner's convictions was continuous and uninterrupted. The trial court then announced its findings under both subsections 5(a) *and* 5(b), that the assault indicated Petitioner's willingness to commit more than one criminal offense, and that the assault caused a greater or qualitatively different injury to the victim.

The trial court's findings under subsection (5) were supported by evidence in the record. Testimony revealed that the plan among the co-conspirators involved inflicting a number of non-lethal wounds before inflicting a lethal injury. Petitioner's conduct in conformity with the plan supports the trial court's finding that Petitioner indicated a willingness to commit more than one criminal offense; Petitioner intended to assault the victim by stabbing her several times before his co-conspirator attempted to kill her by cutting her throat.

Similarly, the assault committed by Petitioner (*i.e.*, when Petitioner stabbed the victim in the abdomen) caused qualitatively different harm than the attempted murder (when Petitioner's co-conspirator cut the victim's throat and twisted her neck). The surgeon who treated the victim testified that due to the stab wounds to her abdomen, the victim had a three-to-five percent lifetime risk of needing another operation because of bowel obstruction due to scar formation. Tr., pp. 374-75. He also detailed the additional surgical steps and extended recovery time required for those wounds. Tr., 365-73.

In his state PCR proceedings, Petitioner argued trial counsel should have objected to the consecutive sentences under Or. Rev. Stat. § 161.067, which provides in pertinent part:

> When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.

Or. Rev. Stat. § 161.067(1). This statute, however, does not support any objection to Petitioner's consecutive sentences.

Under Oregon law, the statutory provisions prohibiting attempted murder and first-degree assault each require proof of an element the other does not. Attempted murder is committed "when a person intentionally engages in conduct that constitutes a substantial step toward intentionally causing the death of a human being." *State v. Lavender*, 68 Or. App. 514, 516, 682 P.2d 823, 824 (1984); Or. Rev. Stat. § 161.405 (defining "Attempt") § 163.005 (defining "Criminal homicide"), § 163.115 (defining "Murder"). Oregon law provides that a person commits first-degree assault if he "[i]ntentionally causes serious physical injury to another by means of a deadly or dangerous weapon." Or. Rev. Stat. § 163.185. Thus, one requires an intent to cause the death of a human being, and the other requires infliction of serious physical injury with a weapon, which are two different elements. As such, § 161.067 recognizes separately punishable offenses for each statutory violation and does not support any objection to Petitioner's consecutive sentences.

The facts underlying Petitioner's convictions do not demonstrate that Petitioner was entitled to concurrent sentencing under Oregon law, and trial counsel was not ineffective for failing to raise Petitioner's proposed argument. Accordingly, the state PCR court's dismissal of Petitioner's claim as meritless was not contrary to or an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas corpus relief.

## **CONCLUSION**

For these reasons, the Court DENIES the Petition for Writ of Habeas Corpus (ECF No. 2) and DISMISSES this action.

9 - OPINION AND ORDER -

The Court DENIES a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 13th day of February, 2017.

John V. Acosta
United States Magistrate Judge

10 - OPINION AND ORDER -